IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JULIE TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-180 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Julie Taylor appeals the decision of the Acting Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.  BACKGROUND**

Plaintiff applied for DIB and SSI in May of 2010, alleging a disability onset date of December 8, 2009. Tr. ("R."), pp. 28-29, 225-48. The alleged onset date fell one day after the denial of a prior application on December 7, 2009. R. 25-27. Plaintiff's last insured date for purposes of the DIB application was June 30, 2011. R. 473.

Plaintiff was forty-four years old on her alleged disability onset date and was forty-seven years old at the time the Administrative Law Judge ("ALJ") issued the first unfavorable decision on her applications under consideration. R. 7-22, 225. Plaintiff initially applied for benefits based on allegations of back and mood disorders. R. 33, 71-72. Plaintiff has a tenth grade education, (R. 32), and prior to her alleged disability, Plaintiff had accrued a relevant work history that included quality control inspector, surging/sewing machine operator, dietary nursing aide, and poultry plant de-boner, saw operator, and handler. R. 18, 280.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 89-96, 108-11. Plaintiff requested a hearing before an ALJ, (R. 106), and the ALJ held a hearing on January 5, 2012. R. 23-61. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from William Stewart, a Vocational Expert ("VE"). Id. On January 31, 2012, the ALJ issued an unfavorable decision, in which he determined Plaintiff's Residual Functional Capacity ("RFC") did not preclude Plaintiff from performing her past relevant work, and therefore she was not under a "disability" as defined in the Social Security Act. R. 7-22.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review, and Plaintiff then filed a civil action in this Court requesting reversal of the adverse decision. See Taylor v. Astrue, CV 112-091 (S.D. Ga. July 3, 2012). On December 4, 2013, United States District Judge J. Randal Hall reversed the Commissioner's decision and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. Id., doc. no. 17. In particular, Judge Hall adopted this Court's recommendation for remand because the ALJ's severity determination as to Plaintiff's carpal tunnel syndrome ("CTS"), as well as the concomitant evaluation of Plaintiff's

subjective testimony concerning her CTS symptoms, were not supported by substantial evidence. Id., doc. nos. 15, 17.

Upon remand to the Commissioner, the ALJ held a hearing on December 3, 2014. R. 501-29. Plaintiff, again represented by counsel, testified, as did Robert Brabham, Jr., a VE. Id. On March 20, 2015, the ALJ issued an unfavorable decision. R. 470-90.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since December 8, 2009, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.).

2. The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease, bipolar disorder, and carpal tunnel syndrome (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) in that she can lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours in a workday; and sit for about six hours in a workday.[1] She can occasionally balance, sto[o]p, kneel crouch, crawl, and climb stairs and ramps, but never climb ladders, ropes, and scaffolds. Use of her upper

---

[1]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

3

> extremities is limited to frequent. Due to her mental impairment, she is further restricted to simple, unskilled, repetitive work. Thus, the claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).
>
> 5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including machine tender and parking lot attendant (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from December 8, 2009, through March 20, 2015 (the date of the ALJ's decision) (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 475-84.

When the AC denied Plaintiff's request for review of this second unfavorable decision, R. 464-66, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to address Plaintiff's schizoaffective disorder at step two of the sequential process; (2) the ALJ failed to properly evaluate Plaintiff's testimony regarding hallucinations and the ability to concentrate and maintain persistence and pace; and (3) the ALJ posed a hypothetical question to the VE that failed to account for concentration limitations. See doc. no. 16 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 17 ("Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by

4

substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether

correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff argues the ALJ failed to properly analyze her mental impairments, and thus presented an invalid hypothetical to the VE that was relied upon to determine Plaintiff is not disabled. In particular, Plaintiff asserts that because the ALJ did not address a diagnosis of schizoaffective disorder, he did not fully consider Plaintiff's mental limitations that prevent her from working. Plaintiff further argues that the ALJ improperly analyzed Plaintiff's credibility regarding her ability to concentrate and maintain persistence and pace, and the combination of these two errors resulted in the VE improperly determining there are jobs in the national economy Plaintiff can perform. As explained below, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A. The Failure to Identify Schizoaffective Disorder as a Severe Impairment at Step Two Does Not Warrant Remand.

This portion of Plaintiff's argument is a red herring because the ALJ determined Plaintiff had multiple severe impairments, including bipolar disorder, and thus continued on with the sequential process by carefully considering any limitations imposed by Plaintiff's mental impairments and incorporating them in Plaintiff's RFC. See Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010) (finding no error at step two where ALJ identified status-post cervical fusion but not separately diagnosed chronic back pain as a severe impairment because ALJ continued on to consider all impairments in combination, including claimant's subjective complaints, limitations, and diagnoses related to pain during remaining steps of sequential process). Unlike the first administrative opinion that did not address potential limitations associated with CTS and was therefore remanded by the Court, the second

administrative opinion recognized Plaintiff had a mental impairment, specifically recognized her "schizoaffective disorder, bipolar type" and accompanying treatment, (R. 481), and included limitations in Plaintiff's RFC related to mental functioning.

Not only does Plaintiff misstate the record concerning the ALJ's alleged failure to discuss Plaintiff's schizoaffective disorder, but her brief is bereft of any explanation of the "overlay of distinct symptoms beyond those of bipolar disorder." Pl.'s Br., p. 11. Nor does Plaintiff point to any functional limitations imposed by a physician as distinct to the schizoaffective disorder diagnosis. Indeed, the ALJ particularly recognized Plaintiff had moderate difficulties with concentration, persistence or pace, but found despite some variance in focus and concentration throughout the treatment notes, Plaintiff was described as alert and fully oriented, with goal-directed thought processes. R. 476. The ALJ also thoroughly discussed Plaintiff's mental health treatment, including multiple medication changes utilized to address Plaintiff's symptoms of mental impairments. R. 480-82.

In addition, a severe impairment is one that significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." Id. §§ 404.1521(b) & 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

7

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

Id. §§ 404.1521(b) & 416.921(b).

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). A diagnosis of schizoaffective disorder does not automatically equate to a "severe" impairment. Rather, functional limitations attendant to a diagnosis, not the mere existence of an impairment, guide the administrative analysis. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005). The ALJ took account of Plaintiff's mental impairments by restricting her to simple, unskilled, repetitive work, (R. 477), thus considering Plaintiff's mental limitations throughout the sequential process.

As discussed in detail below, substantial evidence supports the ALJ's determination that any additional mental impairment to the bipolar disorder specifically listed as a severe impairment at step two does not significantly affect Plaintiff's ability to perform basic work activities for the jobs identified by the VE.

**B.  The ALJ Properly Analyzed Plaintiff's Subjective Complaints.**

Plaintiff also argues the ALJ erred in assessing her credibility as it relates to her subjective complaints regarding hallucinations and her ability to concentrate and maintain persistence and pace. Pl.'s Br., pp. 12-14. According to Plaintiff, the ALJ's analysis "lacks any

8

substantive discussion of Plaintiff's hallucinations" and "demonstrates a complete misunderstanding of hallucinations and triggers of hallucinations that cannot necessarily be replicated in a sixty minute counseling session." Id. at 13-14. However, examination of the ALJ's decision reveals not only a detailed chronological discussion of Plaintiff's mental health treatment, but also substantive analysis explaining inconsistencies between Plaintiff's subjective complaints about hallucinations, as well as about pain related to physical impairments, and the medical record, including the observation that "no physician treating the claimant has suggested specific limitations for her." R. 480-83. Plaintiff points to nothing specific in the record to support her sweeping claims about limitations related to her hallucinations and other, unspecified subjective complaints.

### 1. The Standard for Evaluating Subjective Complaints

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or

9

nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[2] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted). As explained below, the ALJ properly conducted the Holt analysis and reached the conclusion supported by substantial evidence that the degree of limitations asserted by Plaintiff were not supported by the record.

### 2. The ALJ Thoroughly Discussed and Properly Discredited Plaintiff's Subjective Complaints.

Plaintiff's focus on one sentence in the ALJ's opinion that Plaintiff's hallucinations improved after a change in medicine as a "snapshot" and not a longitudinal analysis of Plaintiff's records is itself but a "snapshot" of the ALJ's extensive analysis. Starting at the step three analysis of Listing 12.04, the ALJ conducted a thorough analysis of Plaintiff's mental functioning. Listing 12.04 addresses affective disorders, and provides that such a disorder is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

10

depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. 404, Subpt. P, App. 1, § 12.04. A claimant meets the required level of severity if she satisfies the criteria in paragraphs A and B, or paragraph C, of Listing 12.04. Id. §§ 12.00A, 12.04. The ALJ focused his analysis on the Paragraph B criteria, which is the same necessary criteria for other mental listings, such as 12.03 Schizophrenic, Paranoid and Other Psychotic Disorders, 12.06 Anxiety Related Disorders, and 12.08, Personality Disorders.[3]

The ALJ explained Plaintiff had only mild restriction in her activities of daily living and noted Plaintiff's treating physicians had not identified any limitations in such activities related to her mental conditions. R. 476. Nowhere in Plaintiff's lengthy recitation of her medical records and treatment notes of her doctors does she identify any restrictions by her physicians related to a mental impairment. The ALJ also discussed Plaintiff had only mild difficulties in social functioning, sharing a home with family members and attending church nearly weekly. R. 275, 294, 309, 476. As to concentration, persistence or pace, the ALJ acknowledged moderate difficulties, but also noted Plaintiff was described in treatment notes as alert and fully oriented, with goal-directed thought processes. R. 442, 476.

Although the longitudinal record did reflect variance in focus and concentration, there were no more than moderate difficulties, which doctors addressed through changes to Plaintiff's medication. R. 476; R. 480 (citing Exs. 7F, 12F, treatment records from Serenity Behavioral Health Systems); see also R. 416 (Psychiatric Review Technique Form); R. 420-23 (Mental

---

[3]Paragraph B criteria list impairment-related functional limitations that are incompatible with the ability to do any gainful activity. 20 C.F.R. 404, Subpt. P, App. 1, § 12.00A. To satisfy the criteria, a claimant must show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. § 12.04B.

Residual Functional Capacity Assessment). Indeed, at appointments in 2013 memorializing diagnoses of Schizoaffective Disorder and Bipolar Disorder, and acknowledging some continued hallucinations, Plaintiff was described as oriented to person, place and situation, having intact attention and concentration, and having organized thought processes. R. 683, 685. These are part of the office treatment records from Serenity Behavioral Health listed as Exhibit 17F and referenced by the ALJ.[4] R. 481-82. The ALJ accounted for these moderate difficulties in limiting Plaintiff to "simple, unskilled, repetitive work." R. 477.

To the extent Plaintiff recites medical evidence related to her subjective complaints regarding physical pain in the background section of her initial brief, (Pl.'s Br., pp. 5-7), she makes no argument on this point in the discussion of alleged errors with the ALJ's analysis of subjective complaints. Id. at 12-14. At best, Plaintiff attempts to bootstrap an argument about subjective complaints of physical pain into her argument about the question presented to the VE, (id. at 15), but she offers no specific argument or citations to the record about how the ALJ's analysis of her subjective complaints of physical pain were not accounted for in the functional limitations in the ALJ's RFC determination. The Court will not hazard to guess what pain from which physical ailments identified and thoroughly reviewed by the ALJ might form the basis for Plaintiff's conclusory argument that physical pain, in addition to her hallucinations, interfered with her concentration, persistence, and pace.

In any event, the ALJ explained his reasons for discrediting her subjective complaints. For example, Plaintiff claimed to wear splints for her hands every day and night, including

---

[4]These same records also show, as noted by the ALJ, that although Plaintiff claimed her doctors refused to prescribe sleep medication when she complained of sleeplessness, she was prescribed Amitriptyline (Elavil) and later Trazodone to address sleep issues. R. 482, 513-14, 664-70.

12

while sleeping, but she was not wearing them at the hearing. R. 482, 521. Moreover, as described above, the ALJ included numerous limitations on the performance of physical activity in the RFC. R. 477. Plaintiff fails to address, let alone explain with citations to the record evidence, how these limitations were insufficient to address any particular physical impairment.

The ALJ carefully compared Plaintiff's subjective complaints about mental impairment, including hallucinations, to the objective evidence to determine whether Plaintiff's condition could be expected to give rise to the level of limitations she claimed. Plaintiff attempts to explain away the lack of medical support for the severity of her claims related to hallucinations by suggesting the episodic nature of hallucinations makes for difficult replication in a treatment setting. The fact remains, as pointed out by the ALJ, "no physician treating [Plaintiff] has suggested specific functional limitations for her." R. 483. Indeed, a comparison of the recitation of the medical record related to Plaintiff's mental impairment as set forth by the ALJ, as well as by the parties in the briefing before this Court, is remarkably similar. Compare Pl.'s Br., pp. 7-9 with Comm'r's Br., pp. 5-7, 11-12. The records of psychiatrists Kenneth Azar, Hany Elia, and Julian Bravo who treated Plaintiff are all cited and reviewed by the ALJ and in the briefing of Plaintiff and the Commissioner. Where the parties differ is the *interpretation* of the medical record as it relates to the ALJ's decision not to credit the severity of Plaintiff's claimed subjective complaints.

However, the question is not whether the ALJ could have reasonably credited Plaintiff's complaints, but rather, "whether the ALJ was clearly wrong to discredit" them. Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011). On this record, the Court concludes the ALJ was not clearly wrong to discredit Plaintiff's subjective complaints. In sum,

the ALJ relied on the record evidence in total to discredit Plaintiff's subjective complaints, and the credibility determination is supported by substantial evidence.

### C. The ALJ Properly Relied on the VE's Testimony to Determine Plaintiff Was Not Disabled.

Plaintiff also argues the ALJ erred at step five by posing a hypothetical question to the VE that failed to properly account for concentration limitations. Pl.'s Br., pp. 14-15. As explained below, substantial evidence supports the ALJ's finding that Plaintiff can perform the requirements of unskilled, light work as identified by the VE.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

Furthermore, although the Eleventh Circuit has noted other circuits have rejected the contention that simply limiting a hypothetical question to simple, routine tasks or unskilled work may not generally account for limitations in concentration, persistence, and pace, there are other ways to account for such limitations in formulating a valid hypothetical for the VE. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180-81 (11th Cir. 2011).

> [W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for these limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. at 1180; see also Lee v. Comm'r, Soc. Sec. Admin., 551 F. App'x 539, 541 (11th Cir. 2014); Washington v. Soc. Sec. Admin., Comm'r, 503 F. App'x 881, 883 (11th Cir. 2013).

Here, Plaintiff argues in her original brief that the hypothetical presented to the VE upon which the ALJ relied was incomplete because the ALJ did not adequately account for limitations in concentration, persistence, and pace resulting from mental impairments and unspecified physical pain. Pl.'s Br., pp. 14-15. In her reply brief, Plaintiff amplified her argument to include the contention that the ALJ should have concluded Plaintiff was disabled because the VE testified there were no jobs available for a person being off task twenty percent of the time and having at least three unscheduled absences per month as a result of mental health or pain limitations. Doc. no. 17, pp. 1-2.

The first hypothetical posed by the ALJ asked as follows:

A light exertional. With occasional climb of ramps and stairs as well as ladders, ropes, and scaffolds. There's also an occasional subset of postural to include balance, stoop, kneel, crouch, crawl. There's also a limitation to simple, routine, repetitive work. And let me add to that a upper extremity use limited to frequent. Those would be the limits.

R. 524. The VE opined those limitations would prevent Plaintiff from performing any past relevant work but did identify two light, unskilled jobs with an SVP of 2: machine tender and parking lot attendant.[5] R. 524-25.

---

[5] Using the skill level definitions in 20 C.F.R. § 404.1568(a), the Dictionary of Occupational Titles lists the SVP categorization for unskilled work at 1-2. SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

In the second hypothetical, the ALJ maintained the same limitations of the first hypothetical but added, "[R]ather than frequent limitation on the use of the upper extremity, more specifically the hands in this particular case, the limit would be occasional." R. 525. The VE responded there would be a "drastically" reduced occupational base, but some jobs would remain. R. 525. In his third and final hypothetical, the ALJ reduced the exertional level to sedentary and all other limits maintained but for occasional use of the upper extremities. R. 525. The VE opined no jobs would be available under the third hypothetical. R. 526.

Plaintiff's counsel then questioned the VE. Counsel first offered an additional limitation on hypothetical two that would require no interaction with the general public. R. 526. That restriction eliminated the usher position the VE had identified under the drastically reduced occupational base. R. 526. When counsel offered the additional restriction of missing three or more days of work as a result of mental health limitations and being off task twenty percent of the time as a result of mental health or pain limitations, the VE testified those restrictions "would not be consistent with gainful employment." R. 526-27. In making his final determination that there were jobs available Plaintiff could perform, the ALJ relied on the first hypothetical – the one which included all of the restrictions validly supported by the record – to determine that Plaintiff was not disabled.

Plaintiff contends the first hypothetical did not accurately describe all of her limitations supported by the substantial evidence of record, and in particular, Plaintiff argues her moderate limitations with regard to concentration, persistence or pace associated with her schizoaffective disorder and unspecified physical pain were not appropriately included. Of course, as discussed extensively in Part III.B, the ALJ properly discounted Plaintiff's subjective complaints that she claims should have been included. To the extent Plaintiff paints with a broad stroke to claim that

16

her limitations associated with unspecified physical pain were not included without any specific details, the Court will not hazard a guess as to the specifics of what these unnamed limitations might be.

Plaintiff's argument the ALJ did not properly address her mental impairments by including a limitation to simple, routine, repetitive work, also misses the mark. Plaintiff overstates the holding of Winschel, 631 F.3d 1176, when she argues the Eleventh Circuit ruled a limitation to simple, routine, repetitive work is insufficient to account for moderate limitations in concentration persistence, or pace. To the contrary, as explained above, when the medical evidence supports the determination that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limitation to unskilled work in a hypothetical to a VE sufficiently accounts for such limitations.[6] See Winschel, 631 F.3d at 1180; see also Davis v. Comm'r of Soc. Sec., 11 F. Supp.3d 1154, 1159, 1166-67 (M.D. Fla. 2014) (citing Kinnard v. Comm'r of Soc. Sec., 426 F. App'x 835, 837 (11th Cir. 2011) and explaining "error in Winschel was that, although the law judge found that the plaintiff had a moderate limitation in concentration, persistence, or pace, the hypothetical question to the VE contained *no* restriction regarding that limitation; appellate court "had no occasion to determine whether a restriction to simple routine work was adequate if there was a moderate limitation in concentration, persistence, or pace"). Here, the ALJ explicitly included the moderate limitations from his mental functional analysis into the RFC, (R. 477), and then included the limitation in the hypothetical to the VE upon which he relied to conclude Plaintiff was not disabled. Plaintiff points to nothing in the record to show any credible, additional limitations should have been included in the hypothetical, whether related to mental impairment or physical pain. Plaintiff

---

[6]"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a) & 416.968(a).

points to nothing in the record that validly supports a conclusion she would be off-task for twenty percent of the day and miss three days of work (presumably per month).

In sum, in presenting his hypotheticals to the VE, the ALJ properly excluded those of Plaintiff's alleged limitations that he found to be unsupported or incredible. See Crawford, 363 F.3d at 1161. Because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics, the ALJ's reliance on the VE testimony was proper. McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 6th day of December, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA